IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ottawa Tribe of Oklahoma,                          Case No. 3:05 CV 7272

                    Plaintiff,      MEMORANDUM OPINION
                                    AND ORDER

     -vs-
                                    JUDGE JACK ZOUHARY

Samuel Speck, Director
Ohio Department of Natural Resources,

                    Defendant.

**INTRODUCTION**

This matter is before the Court on Defendant Speck's Motion to Dismiss (Doc. No. 25). Defendant advances nine separate grounds for dismissal. Based upon the written briefs and the oral hearing held on July 13, 2006, the Court denies the Motion. This Order is supplemented by the transcript of the hearing.

**1)  JUSTICIABLE CONTROVERSY**

Speck argues the Tribe does not establish a justiciable dispute regarding the Tribe's commercial hunting and fishing rights because the Tribe is not present in Ohio and, without the Tribe's presence, the claim for fishing and hunting rights is not ripe. He further argues that the Tribe fails to detail how it would use these rights and, therefore, it has no real or immediate threat of injury.

In response, the Tribe argues that the State's press release stating that the Tribe relinquished its hunting and fishing privileges in Ohio demonstrates a concrete, particularized, and imminent

injury. It argues the dispute is concrete: namely, whether the alleged treaties provide the Tribe with hunting and fishing rights in Ohio.

### A.    Standing

To have standing under Article III, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).

To demonstrate an injury in fact, a plaintiff must show the injury is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. at 180.

### B.    Ripeness

To determine whether an issue is ripe for judicial decision, a court uses a two-part analysis: "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *National Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).

### C.    Discussion

The Tribe attaches to its Complaint a June 2, 2005 letter addressed to Speck as the Director of the Ohio Department of Natural Resources (ODNR) advising him that the Tribe, dba the Ottawa Tribe of Oklahoma Fisheries Corp. (Company), intends to exercise its fishing and hunting rights granted in the Treaty of Fort Industry. This letter states that the Company is "in the process of purchasing fishing boats and gill nets, hiring crews and arranging docking and processing facilities to engage in commercial fishing in the [Treaty Fishing Area]."

2

That same day, Attorney General Jim Petro issued a press release stating that he was rejecting the Ottawa Indian Tribe's claim for hunting and fishing rights.

Therefore, the Tribe has alleged an injury in fact that is not hypothetical and that is ripe for discussion.  It wants to fish and hunt and the State disclaims the Tribe's rights.

Speck fails to offer what else might be needed for a judicial determination of the Tribe's rights.

## 2)    ELEVENTH AMENDMENT IMMUNITY

The Tribe sues Speck in his official capacity seeking declaratory and injunctive relief.

Actions for damages against a state official in his or her official capacity are essentially actions against the State, and will be barred by the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), however, the Eleventh Amendment does not bar suits seeking to "enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury." *Quern v. Jordan*, 440 U.S. 332, 337 (1979) (citing *Ex parte Young*). The *Ex parte Young* exception also encompasses claims for prospective declaratory relief. *Alden v. Maine*, 527 U.S. 706, 747 (1999).

"In determining whether the Ex parte Young doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*,  535 U.S. 635, 636 (2002).

Speck argues the *Ex parte Young* exception to qualified immunity is inapplicable to this case because the Tribe's claim implicates the State's special interests in sovereignty. In support of Eleventh Amendment immunity, Speck cites *Idaho v. Couer d'Alene*, 521 U.S. 261 (1997).

3

In *Couer d'Alene*, the Supreme Court held the *Ex parte Young* exception is inapplicable when a "suit is the functional equivalent of a quiet title action which implicates special sovereignty interests." 521 U.S. at 281. Thus, Eleventh Amendment immunity will apply to a case against a state official sued in his official capacity if the suit 1) implicates special sovereignty interests and 2) is the "functional equivalent of a quiet title action." *Id.*; *MacDonald v. Village of Northport, Mich.*, 164 F.3d 964, 971-72 (6th Cir. 1999).

In *Couer d'Alene*, the Court explained at 282:

> The suit seeks, in effect, a determination that the lands in question are not even within the regulatory jurisdiction of the State. The requested injunctive relief would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and waters. The suit would diminish, even extinguish, the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory. To pass this off as a judgment causing little or no offense to Idaho's sovereign authority and its standing in the Union would be to ignore the realities of the relief the Tribe demands.

The Sixth Circuit has held that anything short of a quiet title action is not barred under *Couer d'Alene*. *Arnett v. Myers*, 281 F.3d 552, 568 (6th Cir. 2002); *Hamilton v. Myers*, 281 F.3d 520, 528 (6th Cir. 2002). In *Arnett v. Myers*, the Sixth Circuit explained the broad implications at issue in *Couer d'Alene*: "[i]f the Tribe in *Couer d'Alene* had prevailed, Lake Couer d'Alene would have been annexed to the sovereign control of the Tribe, effectively placing the lake beyond the jurisdiction of the State of Idaho." *Arnett*, 281 F.3d at 568. The Sixth Circuit distinguished the Arnetts' action seeking a declaration of their riparian fishing rights already recognized by the State of Tennessee from *Couer d'Alene*. *Id*. The court explained:

4

If the Arnetts prevail at trial, Reelfoot Lake will remain within the sovereign control of the State of Tennessee, and will continue to be subject to Tennessee's regulatory authority. At most, if the Arnetts prevail, the State of Tennessee will be required to respect the Arnetts' riparian fishing rights-something the state is required to do under the jurisprudence of the Supreme Court of Tennessee. The relief sought by the Arnetts in this case does not begin to approach the far-reaching and invasive relief sought by the Tribe under the particular and special circumstances of Couer d'Alene, and *this court does not read the ruling of Couer d'Alene to extend to every situation where a state property interest is implicated*.

*Id*. (emphasis supplied).

Speck argues that the Tribe's action is similar to the relief sought in *Couer d'Alene* that implicated special state sovereignty interests. He contends that the Tribe's action concerns the State's sovereign right to control the use of its navigable waterways and, if the relief is granted, the State will be divested of the ability to regulate hunting and fishing in large portions of, *inter alia*, Lake Erie.  The Court disagrees.

The Tribe does not seek exclusive hunting and fishing rights, but just recognition of its right to fish and hunt with limited regulations.[1] Thus, unlike *Couer d'Alene*, the State will not lose jurisdiction or the ability to regulate the land and waterways at issue. Accordingly, the narrow and limited exception to *Ex parte Young* set forth in *Couer d'Alene* does not apply to this case.  In addition, *Arnett* and *Hamilton*, two recent Sixth Circuit cases, limit the application of *Couer d'Alene* and further support rejection of the immunity defense.  Therefore, the Tribe's action against Speck is not barred by the Eleventh Amendment.

---

[1]

If this Court determines the Tribe has hunting and fishing rights, then it must determine what regulations the State can place on the Tribe's hunting and fishing rights. *E.g. Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. State of Wis.*, 740 F.Supp. 1400, 1409 (W.D.Wis.1990).

5

### 3)   FAILURE TO JOIN AN INDISPENSABLE PARTY

Speck argues this action must be dismissed under Fed. R. Civ. P. 19 because the Tribe has failed to join two indispensable parties: the State of Michigan and the United States. He argues the United States is an indispensable party because the Tribe is asking the Court to interpret treaties entered into by the United States with the Ottawa Tribe.

Speck further argues that the State of Michigan's rights are implicated by the Treaty of 1807 and, accordingly, such rights make the State of Michigan an indispensable party. He also contends that as a bordering state, the State of Michigan's rights are affected by the hunting and fishing rights sought by the Tribe in this suit.

The Tribe responds that it seeks no relief with respect to any lands owned by the United States and therefore the United States is an unnecessary party. It asserts the United States' only interest in this action arises from its trust relationship with the Tribe and because this lawsuit does not jeopardize that interest, the United States is not a necessary party. The Tribe also points out that unlike the cases cited by Speck (*Nichols v. Rysavy*, 809 F.2d 1317 (8th Cir. 1987) and *Navajo Tribe of Indians v. New Mexico*, 809 F.2d 1455 (10th Cir. 1987)), the United States is not an indispensable party because the legality of its actions is not challenged in this lawsuit.

The Tribe argues the State of Michigan is not an indispensable party because it seeks no relief against it. It further contends Speck's adjacent water argument is without support.

The Tribe also argues, even assuming the United States or Michigan is a necessary party, neither are indispensable because: 1) this case affects no burden or obligation of either party and 2) no prejudice will result because the relief sought is exclusively within the State of Ohio.

6

A court invokes a three-step analysis to determine whether Federal Civil Rule 19 will bar an action. *Keweenaw Bay Indian Community v. State*, 11 F.3d 1341, 1345-46 (6th Cir. 1993).  The first is whether a person is necessary to the action who should be joined if possible pursuant to the criteria of Federal Civil Rule 19(a).  Next, if the court finds that the absent person should be joined, it must then consider the issues of personal jurisdiction and indispensability.  "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 (1968).  Finally, the third step involves an analysis of the factors set forth in Federal Civil Rule 19(b) to determine whether the court may proceed without the absent party.

The Court finds the United States is not an indispensable party to this action.  See *Choctaw and Chickasaw Nations v. Seitz*, 193 F.2d 456, 461 (10th Cir. 1952) (United States was not an indispensable party to tribal action for land title); *Sokaogon Chippewa Community v. State of Wis.*, 879 F.2d 300, 305 (7th Cir. 1989) (United States was not indispensable party to tribal action for mineral rights); *Puyallup Indian Tribe v. Port of Tacoma*, 717 F.2d 1251, 1254 (9th Cir. 1983) ("Nonetheless, the rule is clear in this Circuit and elsewhere that, in a suit by an Indian tribe to protect its interest in tribal lands, regardless of whether the United States is a necessary party under Rule 19(a), it is not an indispensable party in whose absence litigation cannot proceed under Rule 19(b)."); *Red Lake Band of Chippewas v. City of Baudette*, 730 F.Supp. 972, 980 (D.Minn. 1990) (United States was not indispensable party to action).  Additionally, this Court can shape any relief to avoid prejudice to the United States.

The cases cited by Speck are distinguishable because 1) the Tribe is not challenging the validity of the treaties, *Navajo Tribes of Indians v. State of New Mexico*, 809 F.2d 1455, 1471-71 (10th Cir. 1987), and 2) the Tribe is not alleging that the United States acted illegally in granting patent fees and if found to be illegal the United States would resume fiduciary responsibility and exposure to damages, *Nichols v. Rysavy*, 809 F.2d 1317, 1333 (8th Cir. 1987).

### 4)    ICCA STATUTE OF LIMITATIONS

The Indian Claims Commission Act (ICCA) refers to claims against the United States. 25 U.S.C. §§ 2, 70 (repealed). Thus, the ICC only had jurisdiction to hear claims against the United States seeking monetary relief. *Cayuga Indian Nation v. Cuomo*, 667 F.Supp. 938, 947 (N.D.N.Y. 1987) ("The [ICC] was to hear only claims against the United States."); *see also, Mille Lacs Band of Chippewa Indians v. Minn.*, 853 F.Supp. 1118, 1137 (D. Minn. 1994); *United States v. Dann*, 873 F.2d 1189, 1198 (9th Cir. 1989) (the ICC had jurisdiction to award money damages only). The plain language of the statute states that the ICCA only applies to claims against the United States. Accordingly, the five year statute of limitations in the ICCA does not apply to this claim.

### 5)    RES JUDICATA AND COLLATERAL ESTOPPEL

#### A.    Issue Preclusion

To successfully preclude a party from litigating an issue, the party asserting preclusion must establish the traditional elements of collateral estoppel: 1) whether "the issue in the subsequent litigation is identical to that resolved in the earlier litigation;" 2) whether "the issue was actually litigated and decided in the prior action;" 3) whether "the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation;" 4) whether "the party to be estopped was a party to the prior litigation (or in privity with such a party);" and 5) whether "the party to be estopped

8

had a full and fair opportunity to litigate the issue." *Brewster v. Barnhart*, 145 F. App'x 542, 547 (6th Cir. 2005) (citing *Hamer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999)).

Speck cites several Indian Claims Commission (ICC) decisions as proof that the Tribe previously litigated this issue and is, therefore, estopped from bringing the current suit.[2] The ICC decisions at issue, however, only discuss compensation for the general cession of land and which tribes are entitled to that compensation. These decisions do not discuss with detail the Tribe's hunting and fishing rights expressly reserved in the various treaties, and the State was unable to identify any such provisions.

Cession of ceded land only acts to extinguish privileges and rights not expressly reserved. *Oregon Dep't Fish & Wildlife v. Klamath Indian Tribe*, 473 U.S. 753, 765-66, 768 (1985); *see also, W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200, 203 (9th Cir. 1991) (absent some express reservation, hunting and fishing rights are subsumed within an unconditional transfer of title). Absent specific language addressing the reserved hunting and fishing rights, the decisions of the ICC do not reflect actual litigation of that issue. *Klamath*, 473 U.S. at 768; *see also Mille Lacs Band of Chippewa Indians v. St. of Minn.*, 853 F. Supp. 1118, 1137-38 (D. Minn. 1994) *aff'd by Mille Lacs Band of Chippewa Indians v. St. of Minn.*, 124 F.3d 904 (8th Cir. 1997) *aff'd by St. of Minn. v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999).

Therefore, the issue of whether the Tribe has hunting and fishing rights was not adjudicated before the ICC, and collateral estoppel does not bar this issue.

---

[2] *Strong v. U.S.*, 30 Indian Claims Comm'n 8, (1973), *Saginaw Chippewa Indian Tribe of Mich. v. U.S.*, 30 Indian Claims Comm'n 388, *inter alia.*

### B.    Claim Preclusion

Res Judicata bars a claim from subsequent litigation if the following elements are established: 1) there has been a final decision on the merits by a court of competent jurisdiction; 2) the subsequent action is between the same parties or their privies; 3) the issue in the subsequent litigation was litigated or should have been in the prior action; and 4) identity of the causes of action. *Pavlovich v. Nat'l City Bank*, _____ F.3d _____, 2006 WL 908614 *2 (6th Cir. 2006) (quoting *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002)).

In his brief, Speck appears to mistakenly use the terms "res judicata" and "collateral estoppel" interchangeably. He concedes that the parties here are not the same as in the ICC litigation, a necessary element of claim preclusion. Thus, the Tribe's claim is not barred by res judicata.

### C.    ICCA

The chief purpose of the Indian Claims Commission Act (ICCA) was to "dispose of the Indian claims problem with finality." H.R.Rep. No. 1466, 79th Cong., 1st Sess., 10 (1945). The statute states:

> (a) The payment of any claim after its determination in accordance with this Act, shall be a full discharge of the *United States* of all claims and demands touching any of the matters involved in the controversy.

> (b) A final determination against a claimant made and reported in accordance with this Act shall forever bar any further claim or demand *against the United States* arising out of the matter involved in the controversy.

> H.R. Rep. No. 1466, 79th Cong., 2d Sess., 959 § 22 (1946) (emphasis supplied).

The plain language of the statute states that only claims against the United States are barred and fully discharged by ICC decisions. Defendant has taken the language of the statute out of context and misconstrued the meaning of *U.S. v. Dann*, 470 U.S. 39 (1985) and *W. Shoshone Nat'l Council v. Molini*, 951 F.2d 200 (9th Cir. 1991) in his brief to argue the ICCA bars the Tribe's claims.

10

Essentially, he tries to argue the Tribe is barred from bringing this action because is should have asserted its claims in front of the ICC (a res judicata type of argument). Neither the statute nor the cases Speck cites support this argument.

Therefore, the Tribe's claims are not barred by the ICCA. *Mille Lacs*, 853 F. Supp. at 1118; *See also Molini*, 951 F.2d at 200.

### 6)    28 U.S.C. § 2415

28 U.S.C. § 2415 covers contract and tort actions brought by the United States on behalf of the Native Americans. The statute imposes a six year time limit for contract suits and a three year time limit for tort cases. Significantly, § 2415 only concerns actions for money damages.  Further, §2415(c) exempts suits to establish title to real/personal property. Thus, it is inapplicable to this suit because the Tribe seeks declaratory relief.

### 7)    FAILURE TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED 12(B)(6)

#### A.    Treaty of Fort Industry and Connecticut Land Treaty

First, Speck argues that the Connecticut Land Treaty of 1805 not only fails to grant hunting and fishing rights to the Tribe, but expressly bars it from the ceded land.  With respect to the Treaty of Fort Industry of 1805, Speck repeats that the land at issue, Royce Area 54, is landlocked.

The Tribe responds that both these treaties should be read *in pari materia* and as a single agreement with the Tribe. It points out that the treaties were presented to Congress at the same time. It further contends that it implausible that the Tribe would reserve hunting and fishing rights under the Treaty of Fort Industry, which encompasses inland territory Royce Area 54, and not intend to reserve hunting and fishing rights in Royce Area 53, which encompasses Lake Erie.

11

## B.    Treaty of 1807

Speck makes two arguments regarding the Tribe's failure to state a claim for hunting and fishing rights under the Treaty of 1807. First, he argues that the rights granted by the treaty were extinguished once the land under the treaty was transferred from the United States to subsequent owners. Second, Speck argues the Treaty of 1831 expressly revoked any hunting and fishing rights granted in the Treaty of 1807. He points to the Treaty of 1831's language that provides: "On the ratification of this convention, the privileges of every description, granted to the Ottoway nation within the State of Ohio, by the treaties under which they hold the reservations of land herein ceded, shall forever cease and determine."

In response, the Tribe argues that the Treaty of 1831 did not extinguish its hunting and fishing rights under the Treaty of 1807 because the Treaty of 1831 did not explicitly mention the Tribe's hunting and fishing rights.

## C.    Treaty of 1808

Finally, Speck argues the Treaty of 1808 also limited the Tribe's hunting and fishing rights to exist only as long as the United States owned the land. Accordingly, he argues that any hunting and fishing rights granted under the Treaty of 1808 are extinguished.

The Tribe urges this Court to look beyond the literal meaning of both treaties and interpret the treaties within the history, negotiations, and practical construction adopted by the parties. *Mille Lacs Band of Chippewa Indians*, 526 U.S. at 196. The Tribe explains that the Tribe would have interpreted the treaties' language "so long as remain property of the United States" to mean that the rights remained as long as the property was within the United States' territorial jurisdiction.

12

The Tribe further argues that the Treaty of Greeneville also granted it hunting and fishing rights and therefore the 1807 and 1808 treaties should not be read to abrogate these rights. It asserts that Indian rights can only be abrogated with the clearest of language.

Generally, treaties are construed liberally in favor of the Indians. *Oregon Dept. of Fish and Wildlife v. Klamath Indian Tribe*, 473 U.S. 753, 766 (1985); 42 C.J.S. Indians §35. A court must examine the history, purpose, and negotiations of a treaty to determine the rights thereunder. *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 202 (1999). A court interprets an Indian treaty to "give effect to the terms as the Indians themselves would have understood them." *Id.* at 196.

Cession treaties and agreements must be interpreted as the Indians understood them and doubtful expressions must be resolved in their favor. *United States  v. State. of Minn.*, 466 F. Supp. 1382, 1384 (D. Minn. 1979) *aff'd sub nom. Red Lake Band of Indians v. State of Minn.*, 614 F.2d 1161 (8th Cir. 1980).

The parties concede that the interpretation of these treaties are the heart of the case.  Given the sparse record before the Court at this juncture, the Court cannot dismiss the case under the Federal Civil Rules 12(b)(6) standard.

### 8)   LACHES

Laches is an equitable remedy that applies when a plaintiff has 1) unreasonably delayed in asserting his or her rights, and 2) causes prejudice to the defendant as a result of this delay. *Coalition for Gov't Procurement v. Federal Prison Indus., Inc.*, 365 F.3d 435, 437 (6th Cir. 2004).

13

Speck argues the Tribe's claims are barred by laches. He points out the Tribe's hunting and fishing rights will interfere with private land owners' rights within Ohio. Speck relies on *City of Sherrill v. Oneida Indian Nation of New York*, 544 U.S. 197 (2005), as support that laches is an appropriate defense against an Indian tribe's long delay in seeking recognition of land rights.

In response, the Tribe contends 1) laches is a factual question that is not appropriate for a motion to dismiss (cites *Sherman v. Standard Rate Data Serv., Inc.*, 709 F.Supp. 1433, 1441 (N.D. Ill. 1989); *Karlen v. New York Univ.*, 464 F.Supp. 704, 708 (S.D.N.Y. 1979)), and 2) Speck fails to show prejudice resulting from any delay to the State of Ohio.

A court may look at the disruptive effect a plaintiff's relief would have on other parties. *Cayuga Indian Nation of N.Y. v. Pataki*, 413 F.3d 266, 274 (2d Cir. 2005) ("*Sherrill 's* holding is not narrowly limited to claims identical to that brought by the Oneidas, seeking a revival of sovereignty, but rather, that these equitable defenses apply to "disruptive" Indian land claims more generally.") While the Tribe argues it will hunt and fish concurrently with state residents on Lake Erie, the Tribe's claim may be greatly disruptive to private landowners and the State.  Additional questions remain unanswered, such as why did the Tribe wait until now to seek these hunting and fishing rights?  Did the Tribe voluntarily leave the State? Was the delay unreasonable?  Again, the state of the current record is inconclusive and the Court cannot dismiss at this juncture.

### 9)    ABANDONMENT

To establish abandonment, "affirmative proof of an intent to abandon coupled with acts or omissions implementing the intent must be shown." *City of Hamilton v. Harville*, 63 Ohio App.3d 27, 30 (Ohio Ct. App. 1989).  Speck argues the Tribe abandoned all hunting and fishing rights when it left Ohio over one hundred years ago.  The Tribe responds that an abandonment defense 1) cannot be

14

decided on a motion to dismiss, and 2) requires proof of an intent to abandon the property right which Speck has not shown.

Again, the state of the current record is inconclusive and the Court cannot dismiss at this juncture.

**CONCLUSION**

For all the above reasons, Defendant Speck's Motion to Dismiss (Doc. No. 25) is denied.

IT IS SO ORDERED.

____s/ *Jack Zouhary*____<br>
JACK ZOUHARY<br>
U. S. DISTRICT JUDGE<br>
July 31, 2006